**CARLSON LYNCH, LLP**
Eric D. Zard (CA Bar # 323320)
ezard@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel.:   (619) 762-1905
Fax:   (619) 756-6991

**CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP**
Daniel O. Herrera
dherrera@caffertyclobes.com
Christopher P.T. Tourek
ctourek@caffertyclobes.com
150 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Tel.:   (312)782-4880
Fax:   (312)782-7785

*Attorneys for Plaintiffs and the Class*

[Additional counsel appear on signature page]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

# RIVERSIDE COUNTY

| | |
|---|---|
| ANDY PARTIDA, PATRICIA GARY, and GLENN GRAEVES, individually and on behalf of all others similarly situated, | Case No.: 5:20-cv-00436 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| TRISTAR PRODUCTS, INC., | |
| Defendant. | |

1

Plaintiffs Andy Partida, Patricia Gary, and Glenn Graeves (collectively, "Plaintiffs"), on behalf of themselves and all persons similarly situated, by and through their attorneys, allege as follows:

**INTRODUCTION**

1.      This is a class action brought by Plaintiffs, individually and on behalf of all other similarly situated consumers (the "Class"), who purchased Copper Chef Signature Cookware ("Copper Chef Pans," "Pans" or the "Products"), products manufactured, marketed, distributed, warranted and, in some cases, sold by Defendant Tristar Products, Inc. ("Tristar" or "Defendant").

2.      Defendant's ubiquitous television and internet advertisements tout Copper Chef Pans as "breakthrough" and premium alternatives to traditional pans. According to Defendant, Copper Chef Pans utilize "Cerami-Tech Non-Stick Technology" so that "[n]othing sticks to the surface and cleanup is a breeze."[1] And because Copper Chef Pans purportedly never scratch, peel or chip, Defendant warrants that the Pans' non-stick coating will last a lifetime. Defendant's website and product labels make identical claims.

3.      Contrary to Defendant's representations, however, and as evidenced by an endless stream of consumer complaints, Copper Chef Pans do not—and cannot— work as advertised. Copper Chef Pans instead lose their non-stick functionality shortly after purchase, and scratch, chip and peel, leaving customers with an overpriced Pan to which everything sticks.

4.      Defendant knew, or should have known, that Copper Chef Pans are defective, unfit for their ordinary and intended purpose, and incapable of performing as warranted.  Moreover, Defendant actively concealed this material fact from

---

[1] https://www.walmart.com/ip/Copper-Chef-10-Piece-Nonstick-Pan-Set-with-Cerami Tech/927228724?wmlspartner=wlpa&selectedSellerId=0&adid=22222222227158971 152&wl0=&wl1=g&wl2=c&wl3=269426534393&wl4=pla-448938618148&wl5=90 21671&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=online&wl12=9272287 24&veh=sem (last visited Feb. 21, 2020).

Plaintiffs and the members of the Class, and routinely rebuffs customers' refund requests (notwithstanding its purported "money-back guarantee") on grounds they purportedly failed to use the Pans in accordance with Defendant's instructions.

5.     Defendant continues to sell these defective Products to consumers throughout the United States through third-party internet and brick-and-mortar retailers, such as Amazon and Wal-Mart, while continuing to misrepresent their performance properties and causing consumers millions of dollars in damages.

6.     Accordingly, Plaintiffs bring this action to redress Defendant's violations of various states' consumer fraud statutes, and also seek recovery for Defendant's breach of express and implied warranties, and violations of the Magnuson-Moss Warranty Act.

# PARTIES

*Plaintiffs*

**A.     Andy Partida**

7.     Plaintiff Andy Partida ("Plaintiff Partida") is a resident of Beaumont, California.

8.     In or around the end of 2016 or the beginning of 2017, Plaintiff Partida purchased a Copper Chef Grill Pan from QVC for approximately $49.95, exclusive of taxes.

9.     Prior to purchasing the Copper Chef Grill Pan, Plaintiff Partida viewed and relied upon the advertising claims made in Defendant's television infomercials, social media sites and website[2], and on the Product's labels, all of which Defendant and its agents intended to entice consumers to purchase Copper Chef Pans at a premium over conventional non-stick pans.

---

[2] https://www.facebook.com/pg/OfficialCopperChef/videos/?ref=page_internal (Last visited Feb. 20, 2020), https://www.youtube.com/c/copperchefsystem (Last visited Feb. 20, 2020), https://twitter.com/copper_chef/media?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor (Last visited Feb. 20, 2020).

CLASS ACTION COMPLAINT

10.     Plaintiff Partida's Copper Chef Grill Pan began to deteriorate after a few months, starting in the spring of 2017, and finally becoming useless by June of 2017. Specifically, chicken, steak and other food began to stick to the surface after several uses, the Pan began to chip and peel, and the Grill Pan was extremely hard to clean.

11.     Plaintiff Partida used his Copper Chef Grill Pan in accordance with Defendant's instructions, even avoiding dishwasher use although the Grill Pan is advertised as dishwasher safe. The Copper Chef Pans' failure to function as advertised forced Plaintiff Partida to cease using his Grill Pan.

12.     Plaintiff Partida did not contact Defendant to demand a refund.

13.     But for Defendant's myriad misrepresentations and omissions, Plaintiff Partida would not have purchased Copper Chef Pans or would have requested a refund immediately after purchase.

**B.     Patricia Gary**

14.     Plaintiff Patricia Gary ("Plaintiff Gary") is a resident of New York, New York.

15.     In or around September and October 2017, Plaintiff Gary purchased a Copper Chef XL 11" Square Pan with 4-pc Cooking System & Recipes/Casserole and the Copper Chef 10-pc Cerami-Tech Non-Stick Cookware Set/Copper from QVC.

16.     Prior to purchasing Copper Chef Pans, Plaintiff Gary viewed and relied upon the advertising claims made in Defendant's television infomercials and website, and on the Product's labels, all of which Defendant and its agents intended to entice consumers to purchase Copper Chef Pans at a premium over conventional non-stick pans.

17.     These advertising claims guaranteed consumers that the Copper Chef Pans would not scratch or peel, and would be non-stick without the use of any oils.

18.     Plaintiff Gary's Copper Chef Pans began to deteriorate within days of purchase: food began to stick to their surfaces, and the Pans' surfaces also began to scratch, peel, and chip, despite Plaintiff Gary using her Copper Chef Pans in

accordance with Defendant's instructions. The Copper Chef Pans' failure to function as advertised forced Plaintiff Gary to cease using her Pans.

19.    Plaintiff Gary subsequently contacted QVC about the failure of the Copper Chef Pans, only to be given a $10 discount coupon on her "next QVC order," but denied any ability to return her Copper Chef Pans.

20.    In or around October 2019, Plaintiff Gary contacted Defendant by email and demanded a refund.

21.    Defendant's response implied that Plaintiff Gary's Copper Chef Pans were not defective; rather, Plaintiff Gary had failed to properly "season" her Pans, despite the fact Defendant's instructions do not require "seasoning," and declined to refund Plaintiff Gary's purchase price.

22.    Instead, Defendant only offered to provide Plaintiff Gary with a replacement pan, on the condition that Plaintiff Gary pay a shipping and handling fee.

23.    But for Defendant's myriad misrepresentations and omissions, Plaintiff Gary would not have purchased Copper Chef Pans or would have requested a refund immediately after purchase.

**C.    Glenn Graeves**

24.    Plaintiff Glenn Graeves ("Plaintiff Graeves") is a resident of Mercer, Pennsylvania.

25.    On November 18, 2017, Plaintiff Graeves purchased through Amazon three sets of Copper Chef Pans for $39.95 each, exclusive of taxes.

26.    Although Plaintiff Graeves purchased his Copper Chef Pans using Amazon's website, Defendant processed and fulfilled his order.

27.    Prior to purchasing Copper Chef Pans, Plaintiff Graeves viewed and relied upon the advertising claims made in Defendant's television infomercials and website, and on the Product's labels, all of which Defendant and its agents intended to entice consumers to purchase Copper Chef Pans at a premium over conventional non-stick pans.

28.     These advertising claims guaranteed consumers that the Copper Chef Pans would not scratch or peel, and would be non-stick without the use of any oils.

29.     Plaintiff Graeves' Copper Chef Pans began to deteriorate within days of purchase: food began to stick to their surfaces within days of use, and the Pans' surfaces also began to discolor. The Copper Chef Pans' failure to function as advertised eventually forced Plaintiff Graeves to cease using his Pans.

30.     Later in November 2018, Plaintiff Graeves contacted Defendant by telephone to demand warranty coverage for his Copper Chef Pans.

31.     Defendant claimed that Plaintiff Graeves' Copper Chef Pans were not defective, but, rather, Plaintiff Graeves had misused his Pans and declined to refund Plaintiff Graeves' purchase price.

32.     But for Defendant's myriad misrepresentations and omissions, Plaintiff Graeves would not have purchased Copper Chef Pans or would have requested a refund immediately after purchase.

**D.     Defendant**

33.     Defendant Tristar is a New Jersey corporation with its headquarters and principal place of business located in Fairfield, New Jersey.

34.     Defendant is a leading manufacturer and direct marketer of "as seen on TV" consumer products.

35.     Defendant manufactures and warrants all its Products, including Copper Chef, and markets and sells them through infomercials, toll-free numbers and proprietary websites, as well as through traditional and online retailers such as Walmart, Rite-Aid, Walgreens, and Amazon, among others.

## JURISDICTION AND VENUE

36.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal

diversity because at least one plaintiff and one defendant are citizens of different States.

37.     This Court has personal jurisdiction over Defendant because it has conducted substantial business in this judicial District, and intentionally and purposefully placed Copper Chef Pans into the stream of commerce within California and throughout the United States.

38.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this District, advertises in this District and has received substantial revenue and profits from its sales of Copper Chef Pans in this District, including to Plaintiff Partida and other members of the Class; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

## FACTUAL BACKGROUND

### A.     Copper Chef's Deceptive Marketing Campaign

39.     In or around 2015, Defendant began manufacturing, marketing and warranting Copper Chef Pans, and, like most direct marketers, selling the Product via television infomercials, social media sites and a proprietary website, as well as through various retailers, including Wal-Mart and Amazon. Upon information and belief, consumers have purchased tens of millions of dollars' worth of Copper Chef Pans.

40.     Copper Chef Products originally consisted of a single Pan: a 9.5-inch square Pan that Defendant claimed provides "Six Cooking Features in one pan." Defendant also claimed, just as it does today, that Copper Chef Pans are "HEAT RESISTANT UP TO 800" and utilize "Cerami-Tech Non-stick Technology" that ensures "nothing will stick to the pan" and that consumers can "cook without butter, oil or chemicals . . . ."[3]

---

[3] https://web.archive.org/web/20151218214429/http://www.copperchef.com:80/ (archived Dec. 15, 2018).

41.     Over time, Defendant expanded its Copper Chef Product line to include a variety of "cookware" Products it now markets as its "Signature" line, including frying Pans and woks sold in a variety of shapes and sizes.[4]

42.     The Copper Chef Signature line includes: (1) the Copper Chef grill plate; (2) the Copper Chef Copper Cooktop w/ 11" Casserole Pan & Lid; (3) the Copper Chef Black Cooktop w/ 11" Casserole Pan & Lid; (4) the Copper Chef 10" Round Fry Pan; (5) the Copper Chef 12" Round Fry Pan with Lid; (6) the Copper Chef 8"/10"/12" Round Fry Pan Set; (7) the Copper Chef 2.5-QT. Sauce Pan with Lid; (8) the Copper Chef 11" Square Fry Pan; (9) the Copper Chef 5-PC. 9.5" Deep Square Pan Set; (10) the Copper Chef 5-PC. 11" XL Deep Dish Casserole Set; (11) the Copper Chef 9-QT. Wonder Cooker Set; (12) the Copper Chef 12" Square BBQ Pan with Brush; and (13) the Copper Chef 12" x 18" Rectangle BBQ Pan with Brush.[5]

43.     Defendant markets Copper Chef Pans as premium alternatives to traditional cookware. It claims on its website[6] that:

> Copper Chef began with the desire to enhance the home cooking experience with the **durability, performance, and precision** previously enjoyed only by restaurant chefs. Every Copper Chef product is engineered with the intelligent features required to replicate professional cooking on your home stovetop, oven, or countertop.

44.     Defendant's website further claims that its Copper Chef Pans use is infused with "Cerami-Tech Non-Stick Technology" so that "[n]othing sticks to the surface and cleanup is a breeze"[7] and which "provides instant food release and eliminates the need for added fats and oils."[8]

---

[4]  https://www.copperchef.com/cookware/copper-cookware.html?___store=copperchef (last visited Feb. 21, 2020).

[5] *Id*. (last visited Feb. 21, 2020).

[6] https://www.copperchef.com/about-us.html (last visited Feb. 21, 2020).

[7] https://www.walmart.com/ip/Copper-Chef-10-Piece-Nonstick-Pan-Set-with-Cerami-Tech/927228724?wmlspartner=wlpa&selectedSellerId=0&adid=22222222227158971152&wl0=&wl1=g&wl2=c&wl3=269426534393&wl4=pla-448938618148&wl5=9021671&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=online&wl12=927228724&veh=sem (last visited Feb. 21, 2020).

[8] https://www.copperchef.com/copper_chef_features (last visited Feb. 21, 2020).

45.     Defendant's Product packaging also makes bold claims concerning the durability and performance properties of Copper Chef. Defendant claims Copper Chef:

- Has "Cerami-tech non-stick coating"[9]

- Is infused with "Cerami-Tech Non-Stick Technology" so that "[n]othing sticks to the surface and cleanup is a breeze"[10]

- Is "Chip-resistant, Heat resistant"[11]



46.     Defendant's infomercials make similarly false and deceptive advertising claims:

> (NARRATOR) No luck getting food unstuck? Tired of scraping and scouring pans all day only toss them away? No more! Introducing Copper Chef's 360 the super-strong non-stick pan with ceramic tech, the latest in ceramic technology. Watch as ketchup slides right off the

---

[9] https://www.amazon.com/Copper-Chef-4-Piece-Fry-Pan/dp/B07B26Q8HT/ref=sr_1_15?gclid=EAIaIQobChMIzp_GlNvN4gIVBVSGCh0x3QKrEAAYAiAAEgIcEPD_BwE&hvadid=326224921416&hvdev=c&hvlocphy=9021717&hvnetw=g&hvpos=1t2&hvqmt=b&hvrand=258257499848094392&hvtargid=kwd-42430363720&ydadcr=4694_10064352&keywords=copper+chef+saucepans&qid=1559578676&s=gateway&sr=8-15 (last visited Feb. 21, 2020).

[10] https://www.walmart.com/ip/Copper-Chef-10-Piece-Nonstick-Pan-Set-with-CeramiTech/927228724?wmlspartner=wlpa&selectedSellerId=0&adid=22222222227158971152&wl0=&wl1=g&wl2=c&wl3=269426534393&wl4=pla-448938618148&wl5=9021671&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=online&wl12=927228724&veh=sem (last visited Feb. 1, 2020).

[11] *Id.* (last visited Feb. 21, 2020).

surface; sticky eggs slide from pan to plate; look gooey cheese slides right off. Try that with a stainless steel pan. Candy in the wrapper? No problem! Even burnt milk peels right out! In fact, nothing sticks to this pan. Even salmon skin down slides like it's in water. A healthy meal without the extra oil and butter. Look our innovative ceramic tech is designed for rapid and even heat distribution to the entire pan. Make perfect pancakes every time. Amazing omelet makes slides right out. Copper Chef 360 is heat proof up to 850 degrees. Go from stovetop to oven with sturdy double riveted handles. Get juicy results just like professional chefs. Copper Chef 360 is great for grilling, roasting, sautéing, pan frying, and baking. Make this gooey delicious s'more cake in the oven, lifts right out of the pan. Cleanup is a breeze or drop it into the dishwasher Copper Chef 360 is 100% PTFE and PFOA-free and is so durable and resilient it comes with an incredible lifetime guarantee if it ever peels, chips, or blisters we'll replace it no questions asked.[12]

47.   To further entice consumers to purchase Copper Chef Pans, Defendant guarantees that Copper Chef Pans will last a lifetime, and, to that end, offers a "Lifetime Warranty" that its non-stick coating will never peel, chip, or blister, and promises consumers a full refund within sixty days if they are dissatisfied with their purchase.

48.   Plaintiffs and Class members viewed and relied on Defendant's marketing materials and/or product labels prior to purchasing Copper Chef Pans, and believed Defendant's representations regarding the Products' performance properties to be true.

B.   **Copper Chef Does Not—and Cannot—Perform as Advertised**

49.   Contrary to Defendant's representations, however, Copper Chef Pans fail to conform to its various express warranties, including by failing to last a "lifetime" and providing a coating to which food sticks, because they eventually chip, peel and/or lose their non-stick functionality. Simply put, Copper Chef Pans are unsuited for their intended purpose and do not live up to Defendant's baseless marketing claims.

---

[12] https://www.youtube.com/watch?v=KZBzWxeBEGU (Last visited Feb. 25, 2020).

50.    Copper Chef customers have attempted to use the Product only to learn that Defendant's aggressive marketing claims were false and intended to lure them into buying what almost immediately prove to be little more than low-quality Pans that do not perform as marketed and warranted, and which are inferior to lower-cost alternatives. A number of internet blogs and other websites publish consumer complaints describing the exact same performance issues as those described herein and suffered by Plaintiffs and the Class. On consumerreports.com, for example, 86% of customers reviewing Copper Chef gave the Product 1 or 2 stars out of 5 and lodged countless complaints, including the following, which represent only a small sampling of the hundreds of negative consumer reviews[13]:

**Non stick does not last long,** 2 years ago[14]

Non stick for first week of use. Waste of money.

**1st month super non stick, by 3rd month STICKS LIKE GLUE,** 2 years ago[15]

I have cooked eggs and had to scrape them out. I tried with oil and the center of the fray pan is raised so oil goes to the outside. I cooked pork chops and they stuck so bad it was terrible. I made hamburgers same results sticks like glue. These pans are junk. I did heat water in the deep pan and they were right it came right out without sticking. As far as star rating I would like to give a -5 but it's not an option. Don't waste your money on this faults advertisement.

**Starts off great but quickly falls short of expectations**, 2 years ago[16]

I loved this skillet at first. Everything just wiped clean without effort. But after about 2 months it started sticking. Now after 5 months I want to throw it in the trash. I back to the search again for the perfect non-stick skillet.

---

[13] For these and other customer complaints quoted in this Complaint, quotes are left as written, except that those originally in all-caps have been changed to sentence case. Due to the sheer number of typographical and grammatical errors, [sic] notation has not been used. Any emphasis has been added, unless otherwise noted.

[14] https://www.consumerreports.org/products/frying-pans/copper-chef-360-10-pan-386833/overview/ (Last visited Feb. 25, 2020).

[15] *Id*. (Last visited Feb. 25, 2020).

[16] *Id*. (Last visited Feb. 25, 2020).

CLASS ACTION COMPLAINT

**Don't waste your money!** 2 years ago[17]

The scrambled eggs stuck from the beginning, especially on the sides. I fried fish the other night, and it stuck to the pan so bad, that when I finally served it, it was in pieces, even after using a lot of oil. Not as advertised.

**Don't ever buy this Copper 360 pan**, 2 years ago[18]

This copper 360 pan I had one of these pan I have had it for 4 months and used it the way its meant it used. What a waste of money it sticks eggs and meat. This is the worst pan I have had I have put the pan out as its no good.

**I would not recommend this product**, 2 years ago[19]

I was excited about getting the frying pan, seasoned it for the first use and fried an egg, it worked great. The next day I tried another egg and a black plastic coating appeared beneath the egg that was difficult to remove. I am afraid to use the pan now, is it even safe? I want a refund.

**Not non-stick as advertised**, 2 years ago[20]

Agree sully with all previous low rated reviews. Was non-stick the first 1-2 times we used it, but not after that. Use the small skillet mostly for eggs, which come out a horrible mess due to sticking while cooking. And, then have to soak and scrub to get it clean. Should have known a $20 product would function like a $20 product.

**Bad product, worst than most non stick pans**, 2 years ago[21]

Bought at Fry's. Used for about 4 months. Did not use metal to either clean or cook. Now has numerous scratches in the surface. Most things stick, must use oil of some kind. Still cleans up ok. Must use more cleaning with each use. Do not believe tv ads.

**I would not buy again**, 2 years ago[22]

I bought the 9 inch square pan. Everything sticks. Need to really scrub to get food off. Also has deep scratch on it. Copper color is wearing off the bottom. The center of the pan is higher than the edges. This pan is not as advertised. I did not save by buying this. I'm ready to throw it out.

---

[17] *Id*. (Last visited Feb. 25, 2020).

[18] *Id*. (Last visited Feb. 25, 2020).

[19] *Id*. (Last visited Feb. 25, 2020).

[20] *Id*. (Last visited Feb. 25, 2020).

[21] *Id*. (Last visited Feb. 25, 2020).

[22] *Id*. (Last visited Feb. 25, 2020).

CLASS ACTION COMPLAINT

**Don't Waste your Money**, 1 year ago[23]

After only one use the pan's center had crowned making my food run to the sides. I follow the cleaning instructions to the letter. I tried frying eggs in the pan and the became stuck. I literally had to through them away. Don't waste your money.

**Think twice**, 1 year ago[24]

Like the pan, has nice deep sides, however the no stick promise is false. This pan sticks every time I use it. Have to let soak before completely washing.

**Do NOT Buy**, 1 year ago[25]

It works great at first … nothing sticks and cleanup is a snap. But after a month or two of use it loses this feature big time.

**Never buy!!** 1 year ago[26]

My eggs never slid out like the commercial shows! Everything gets stuck to it even with oil and spay. Waste of money! I'll stick to my cast iron skillet!

**I would NEVER buy this junk again!!** 1 year ago[27]

Worse skillet I've ever owned! Everything sticks! Burnt my hand on poorly designed handle! Avoid this do not purchase!!

**Waste of money**, 1 year ago[28]

I tried to cook steaks just like they did on the advertisement … I can't scrape the crust off the pan without taking off the coating … would have been better using an iron skillet. Ruined the deep pan and the shallow pan. Just doesn't work. Lifetime warranty if I pay for replacement??? Doesn't make sense.

**Don't buy the copper frying pan**, 1 year ago[29]

I have used the large copper frying pan for a year. After two weeks food started sticking to the bottom, even after following the "seasoning" techniques. It simply cannot stand up to its claims. Buy cast iron and

---

[23] *Id.* (Last visited Feb. 25, 2020).

[24] *Id.* (Last visited Feb. 25, 2020).

[25] *Id.* (Last visited Feb. 25, 2020).

[26] *Id.* (Last visited Feb. 25, 2020).

[27] *Id.* (Last visited Feb. 25, 2020).

[28] *Id.* (Last visited Feb. 25, 2020).

[29] *Id.* (Last visited Feb. 25, 2020).

CLASS ACTION COMPLAINT

season it or buy the standard Teflon non-stick pans. You'll be happier and save yourself a ton of scrubbing that won't make a difference.

51.  Additionally, on highya.com, 70% of customers reviewing Copper Chef gave the Products 1 or 2 stars out of 5 and lodged countless complaints, including the following, which represent only a small sampling of the hundreds of negative consumer reviews:

Just a waste of money, I've been cooking with this for a month and then to the garbage. All that they promise on TV is BS, and if you want to use your warranty, they will make it so hard so you'll give up, and like I said, to the garbage.[30] (Posted on December 20, 2018)

I purchased the cookware set about a year ago. The pan started sticking after 30 days. I cooked pancakes and eggs in the pan and they stuck to the pan. Since I purchased two, I switched them out and the same thing happened. The coating is also coming off, which was very disappointing. I feel this product is being falsely advertised and the commercials are very good at making you think this really works.[31] (Posted on September 7, 2018)

All the ads say you do not need butter, sprays or oils. They lie. My husband made a couple of burgers in our fry pan, and it burnt the bottom of the pan, and I cannot get the stain out. I will not use Brillo to try as I don't want to scratch the pan, but the stain will NOT come out! I ordered the 5 piece set through Smile Amazon, but it is the Copper Chef 5 piece Cookware Set.[32] (Posted on February 19, 2018)

I bought the Copper Chef frying pan also after seeing the advertisement that the pans do not stick and there is no need for any oils. I did use them the first couple of times without anything sticking, but then it has been horrible. Everything sticks. I too wish I had seen the reviews before buying. They need to take these off the market. False advertisement. Don't buy this pan![33] (Posted on January 21, 2018)

I bought a Copper Chef Pan based on the TV advertising, which showed fried eggs and other foods sliding out of the pan when done without cooking oils or sprays. The very first time I tried it for eggs, I cooked on medium temperature. When I tried to flip the eggs over, they were stuck to the pan as if they'd been glued. The clean up required vigorous scrubbing with a non-abrasive cleaner and soft sponge. None of the claims made in the TV advertisement seem to be legitimate. Don't

---

[30] https://www.highya.com/copper-chef-reviews?page=2 (Last visited Feb. 25, 2020).

[31] *Id.* (Last visited Feb. 25, 2020).

[32] *Id.* (Last visited Feb. 25, 2020).

[33] *Id.* (Last visited Feb. 25, 2020).

CLASS ACTION COMPLAINT

waste your money on these pans. Their "non-stick" claims are completely false and misleading.[34] (Posted on October 4, 2017)

None of the claims in the ad was true! With or without oil everything sticks. Eggs never slide off the pan, it burns.[35] (Posted March 23, 2017)

I bought a 9.5" pan and used it for stovetop cooking for a couple of months. One day I noticed that the coating on top of the pan is starting to flake off. I lightly pressed the coating with my nail and more of it is coming off of the pan. I called Copper Chef's customer services and got told that there's not much they can do. If I want to replace the pan, I have to pay $14.99 out of my own pocket to cover the cost of shipping even though it's their fault. It's the defect of their product.[36] (Posted on March 3, 2018)

Horrible product. Food sticks, you have to soak to get it off. The Copper Chef customer support is horrid. The rep hung up on me after I asked him "isn't this product supposed to be non-sticking?" Save your money and find something else. This is not a good pan.[37] (Posted on December 28, 2017)

I received my Copper Chef pan with great excitement, which came crashing down after only three uses. The way they sell this pan online is all HYPE. After three uses, my eggs stuck so bad that my over easy eggs quickly became a mishmash of eggs. I wasn't trying to make scrambled eggs that stuck to the pan. I returned my entire order, and am now out over $60.00, due to having to send the pans back and losing out on the original shipping and handling charge. What a SCAM and COMPLETE disappointment. Do not buy these pans, unless you want to lose money.[38] (Posted on February 23, 2016)

Don't bother. Yes, we all hope to find a wonderful new, easy to use and clean pan. The infomercial makes it look awesome but they lie! Please don't waste your money. The food sticks ad it isn't real copper, just color coated paint. If you want a great set, invest in the green pans or another well reviewed pan. Copper pan is junk.[39] (Posted on March 3, 2016)

52.    Consumers, like Plaintiff Graeves, who purchased Copper Chef Pans through Amazon, which Defendant monitors since it personally processes and fulfills every order made through Amazon, have made similar complaints:

Seasoned and prepped the cookware as instructed. Largest pan lasted maybe 3 months before everything stuck to it. (I mean, a coat of food.

---

[34] *Id*. (Last visited Feb. 25, 2020).
[35] *Id*. (Last visited Feb. 25, 2020).
[36] *Id*. (Last visited Feb. 25, 2020).
[37] *Id*. (Last visited Feb. 25, 2020).
[38] *Id*. (Last visited Feb. 25, 2020).
[39] *Id*. (Last visited Feb. 25, 2020).

Cleaning it is obnoxious.) Medium pan stuck that bad out of the box. Worthless piece of junk. It looks nice out of the box. Warps and sticks when you clean it. The small pan sticks (no good for eggs, which is about the only thing that you could conceivably use it for.) This was with the very first pair of eggs I ever cooked. They tell you that you don't have to use butter or oil. Copious amounts of butter might give you eggs that don't stick. Might. The Amazon descriptions says: "Cerami-Tech is Copper Chef's exclusive non-stick ceramic coating. It's so super nonstick, nothing sticks to the surface of your skillet, not even burnt cheese! Plus, there's no butter or oil required. This pan is not pre-seasoned. Clean-up is easy because there's no residue left behind. Dishwasher Safe." They should be ashamed. Not a word of this (aside from it not being pre-seasoned) is true! Useless cookware. (Posted on May 8, 2019)[40]

These are not non-stick! I very carefully have followed all the manufacturer's instructions which means, in part, that only a few types of oil can be used with this cookware and never any cooking oil spray. Fried eggs turn out rubbery and stick like crazy. I even had bacon stick to the pan! Crazy!! And because the finish is so delicate it's next to impossible to get these pans clean because no chemicals or abrasives can be used on them. Stick with you heavy old cast iron. (Posted on March 10, 2018).[41]

I am forced to give this product one star. If I could I would not give it any stars. Followed the directions exactly. Food started sticking almost immediately. After only a couple of months food has stuck so bad that it will not even wash off. This was a very bad decision on my part. Do not buy!!! (Posted on August 30, 2018)[42]

I heard amazing reviews for these and was disappointed that the non stick claim is false. Everyone says how food just slides right out and little to no oil is needed. Bull! I tried hashed browns the first day and they for stuck. Next time I used oil but I had to use twice the amount of oil I normally used in other regular pans so that defeated my purpose buying these. I was trying to use less oil in my cooking. Not only food stuck on pan no matter how much oil used, but impossible to clean pans even after soaking overnight. Did I get fake brand? I won't recommend these to anyone. (Posted on September 14, 2018)[43]

Total garbage! It worked fine for the first couple of months, then everything started to stick, even if I added cooking oil! (Posted December 29, 2017).[44]

---

[40] *Id*. (Last visited Feb. 25, 2020).

[41] https://www.amazon.com/Copper-Chef-Square-Fry-Pan/product-reviews/B072PYSXK5/ref=cm_cr_getr_d_paging_btm_next_5?ie=UTF8&reviewerType=all_reviews&filterByStar=one_star&pageNumber=5 (Last visited Feb. 25, 2020).

[42] *Id*. (Last visited Feb. 25, 2020).

[43] *Id*. (Last visited Feb. 25, 2020).

[44] *Id*. (Last visited Feb. 25, 2020).

Do not believe what they tell you, Pans work for about a month, After that food stick and are hard to clean, Very disappointed, Would never buy again. (Posted on December 15, 2017).[45]

I bought these pans and followed all the instructions and was sadly disappointed. They are shoddy and do not perform according to the claims. I have a web chat with 1 of the girls from copper chef. When I didn't say what she wanted me to say, she cut me off. So much for customer service! If you buy them, you are stuck with them. (Posted on November 14, 2017).[46]

I bought a set of these. After receiving them I found that the square pan was not stick resistant, or non-stick as they advertise it to be. So I contacted the company and they promptly sent me a new square pan, but it was no better and food sticks to it, especially fried eggs. This pan is NOT NON STICK. I am very disappointed with this product.
I do not know if the other pans work as advertised because the square pan is the only one I use. We now use a cooking spray on all the Copper Chef pans and pots just to avoid a sticking problem. (Posted on August 9, 2017).[47]

You say nothing sticks to your copper chef pans. Do I ever have a news bulletin for you. Everything sticks. Doesn't matter what heat setting or with oil or without, everything sticks. I will never buy another copper chef product again. (Posted on May 12, 2019)[48]

I have a round 12" skillet and it got bad scratch all I use is a plastic and wood. warranty say 60 days so you r out of luck to get it replaced. Plus everything sticks also. (Posted July 28, 2017).[49]

I bought it directly from them not through Amazon. Mine is a square pan, as the one they advertised on TV. Very disappointed! Almost everything sticks on this pan and it is not very easy to clean up. The only thing good about is no scratches so far. I wonder how they make that TV Ad show nothing sticking in this pan. It is really terrible with this the square pan that I bought sine that everything sticks. (Posted on November 22, 2016).[50]

53.    Defendant is aware of the many defects plaguing Copper Chef Pans. Many of the reviews transcribed above evidence that consumers have repeatedly

---

[45] *Id.* (Last visited Feb. 25, 2020).

[46] *Id.* (Last visited Feb. 25, 2020).

[47] *Id.* (Last visited Feb. 25, 2020).

[48] https://www.amazon.com/Copper-Chef-Square-Fry-Pan/product-reviews/B072PYSXK5/ref=cm_cr_arp_d_viewopt_sr?ie=UTF8&reviewerType=all_reviews&filterByStar=two_star&pageNumber=1 (Last visited Feb. 25, 2020).

[49] https://www.amazon.com/Copper-Chef-Round-10-12/product-reviews/B0727R698B/ref=cm_cr_arp_d_paging_btm_next_2?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews&pageNumber=2#reviews-filter-bar (Last visited Feb. 25, 2020).

[50] *Id.* (Last visited Feb. 25, 2020).

CLASS ACTION COMPLAINT

contacted Defendant to report their dissatisfaction with the Pans, as well as the Pans' propensity to chip, peel, flake and eventually lose their limited non-stick functionality.

54.    Copper Chef's shortcomings are hardly surprising. Experts report Copper Chef is not, in fact, copper cookware. Instead, the Pans appear to be little more than "aluminum with copper colored Cerami-Tech Non-Stick Coating… So basically an induction friendly copper colored aluminum pan with a ceramic coating. Not a copper pan."[51] Defendant thus knew, or should have known, the Pans would and could not perform as advertised prior to placing them into the stream of commerce.

55.    Defendant's unconscionable warranty practices make matters worse.

56.    When consumers seek relief pursuant to Defendant's lifetime guarantee, Defendant merely offers similarly defective Pans incapable of performing as advertised, and only if consumers first return their failed Pans and pay an additional $14.99 for inflated shipping and handling charges. Thus, not only are Defendant's lifetime performance claims patently false, its warranty also fails of its essential purpose.

57.    Defendant also regularly informs consumers that Copper Chef Pans fail because they were not properly "seasoned." The Copper Chef website, however, makes no mention of needing to season the Pans; in fact, it states only that "[t]here's no need to add any extra butter, grease, or oil[,]" and if one desires "added flavor, you *may* season the cooking surface with natural oils such as olive, canola, or peanut oil."[52]

58.    Consumers who desire a refund fare no better. Because Copper Chef Pans fail with repeated use, consumers may not learn that the Pans do not perform as advertised until more than sixty days have passed, precluding them from seeking a refund. As the complaints below demonstrate, Defendant also typically coerces

---

[51] https://www.thecookwareadvisor.com/whats-that-pan-made-of/ (Last visited Feb. 25, 2020).

[52] https://www.copperchef.com/copper-chef-faq (last visited Feb. 25, 2020) (emphasis added).

customers to forego a refund and instead accept similar defective replacement Pans. In other words, Defendant's warranty practices deprive Plaintiffs and Class members of the benefit of the parties' bargain.

> Had this pan 7 months now and all of a sudden everything is sticking like glue. Contacted Tristar Products and they want a money order for $14.99 plus the pan back (at my cost). I don't think I should have to pay for an issue covered by warranty … Horrible customer service.[53] (Posted on March 31, 2017).

> Product worked great for the first week. After about five uses, it is the worst pan we have ever owned. Food sticks to it and takes copious amounts of soap and scrubbing to start to get it off. The return process is very difficult to start as we had to wait for the seller to approve the return. Furthermore, even though the product is defective, we had to pay $20 for return shipping since the product weights so much! Ridiculous.[54] (Posted on February 9, 2017).

> Don't buy this pan! The non-stick surface now sticks and has worn off in less than 2 years. When I checked their warranty, they require a check of $14.99 with the return and that does not guarantee you a replacement[55]. (Posted on June 10, 2018).

> It worked great for the first few months, then things started sticking to it, it didn't clean off as easily, etc. Basically, it didn't work as advertised. I attempted to file a "warranty" claim, but after talking to three people at Copper Chef and in reading their website's stated warranty policy, I would need to mail back the pan with a check/money order for $14.99 and then I would receive my pan back with a new coating. This is silly, when I could buy another pan for less than my shipping cost and the $14.99… It isn't a "warranty" if you have to spend $$ to replace it.[56] (Posted December 8, 2017).

> I purchased this product and it actually was great the first few times I used it. I did have some of the coating chipping off which was not a huge deal. So I called the company to make a warranty claim and learned the warranty is the biggest scam of all… If there is an issue it will cost you more than double to make a claim than buying a new one. This is so shady. If course I didn't want to pay over $40.00 to make a claim…[57] (Posted on August 17, 2017).

---

[53] https://www.amazon.com/Copper-Chef-Square-Pan-Lid/product-reviews/B01FMIU0MM/ref=cm_cr_dp_d_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (Last visited Feb. 25, 2020).

[54] *Id*. (Last visited Feb. 25, 2020).

[55] *Id*. (Last visited Feb. 25, 2020).

[56] *Id*. (Last visited Feb. 25, 2020).

[57] *Id*. (Last visited Feb. 25, 2020).

CLASS ACTION COMPLAINT

59.     These and any other limitations Defendant seeks to impose on its various express warranties, including those arising by affirmation, are unconscionable and unenforceable.

60.     In its capacity as a warrantor, Defendant's knowledge of the inherent defects in Copper Chef Pans renders its efforts to limit the duration of express and implied warranties in a manner that would exclude warranty coverage unconscionable, and any such effort to disclaim, or otherwise limit, its express and implied warranties is null and void. The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant and Plaintiffs and the other Class members, as, at the time of purchase, Plaintiffs and the other Class members had no other options for purchasing additional warranty coverage or negotiating the terms thereof.

61.     The limitations on the warranties also are substantively unconscionable. Defendant knew (and knows) Copper Chef Pans are defective and incapable of performing as advertised. Defendant failed to disclose these defects to Plaintiffs and the other Class members while continuing to market misrepresent the performance properties of Copper Chef Pans; thus, Defendant's enforcement of the limitations on its warranties is harsh and shocks the conscience.

62.     Defendant's fraudulent, deceptive, and unfair practices have caused, and continue to cause, Plaintiffs and Class members significant out-of-pocket losses in the amount of the prices paid for these defective Products, as well as their exorbitant shipping and handling fees Defendant requires consumers to pay for the privilege of receiving similarly inherently defective replacement Pans.

**CLASS ACTION ALLEGATIONS**

63.     This action is brought on behalf of Plaintiffs, individually and as a class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and/or 23(b)(3) on behalf of a nation of consumers. Specifically, the nationwide class consists of: all persons and entities in the United States who purchased Copper Chef Pans (the "Nationwide Class" or

"Class"). Excluded from the Nationwide Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

64.    In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following state subclasses (collectively, the "State Classes"):

- All persons and entities who reside in California and purchased Copper Chef Pans (the "California Class"). Excluded from the California Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

- All persons and entities who reside in New York and purchased Copper Chef Pans (the "New York Class"). Excluded from the New York Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

- All persons and entities who reside in Pennsylvania and purchased Copper Chef Pans (the "Pennsylvania Class"). Excluded from the Pennsylvania Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

65.    This action has been brought and may be properly maintained as a class action for the following reasons:

• <u>Numerosity</u>: Members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe that the proposed Class contains at least thousands of members. Upon information and belief, Defendant marketed and sold Copper Chef Pans to tens, if not hundreds, of thousands of consumers throughout the United States. The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible. The precise number of Class members is unknown to Plaintiffs.

• <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

i.      whether Copper Chef Pans do not perform as advertised and warranted;

ii.     whether Defendant knew that Copper Chef Pans do not performed as advertised and warranted;

iii.    whether Defendant intentionally concealed or failed to disclose to Plaintiffs and the Class that Copper Chef Pans do not perform as advertised and warranted;

iv.     whether Defendant had a duty to Plaintiffs and the Class to disclose that Copper Chef Pans cannot perform as advertised, and whether Defendant breached that duty;

v.      whether a reasonable consumer would consider the defective nature of Copper Chef material in deciding to purchase the Product;

vi.     whether Defendant's advertising claims give rise to actionable express warranties;

vii.    whether Defendant breached its express and implied warranties by selling a defective Product and failing to refund Plaintiffs and Class members all funds paid;

CLASS ACTION COMPLAINT

1            viii.  the appropriate nature of Class-wide equitable relief; and

2            ix.    the appropriate measurement of restitution and/or measure of

3 damages to award to Plaintiffs and Class members.

4 These and other questions of law or fact common to the members of the Class

5 predominate over any questions affecting only individual Class members.

6       •    Typicality: Plaintiffs' claims are typical of the claims of the Class since

7 Plaintiffs purchased Copper Chef Pans, designed, manufactured, and marketed by

8 Defendant, as did each member of the Class. Furthermore, Plaintiffs and all members

9 of the Class sustained monetary and economic injuries arising out of Defendant's

10 wrongful conduct. Plaintiffs are advancing the same claims and legal theories on

11 behalf of themselves and all absent Class members.

12       •    Adequacy: Plaintiffs are adequate representatives of the Class because

13 their interests do not conflict with the interests of the Class they seek to represent;

14 they have retained counsel competent and highly experienced in complex class action

15 litigation; and they intend to prosecute this action vigorously. The interests of the

16 Class will be fairly and adequately protected by Plaintiffs and their counsel.

17       •    Superiority: A class action is superior to other available means of fair

18 and efficient adjudication of the claims of Plaintiffs and members of the Class. The

19 injury suffered by each individual Class member is relatively small in comparison to

20 the burden and expense of individual prosecution of the complex and extensive

21 litigation required by Defendant's conduct. It would be virtually impossible for

22 members of the Class, individually, to effectively redress the wrongs done to them.

23 Even if the members of the Class could afford such individual litigation, the court

24 system could not. Individualized litigation presents a potential for inconsistent or

25 contradictory judgements. Individualized litigation could substantially increase the

26 delay and expense to all parties, and to the court system, presented by the complex

27 legal and factual issues of the case. By contrast, the class action device presents far

28

fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

- Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

## COUNT I

### Violation of the Magnuson-Moss Warranty Act
### (On behalf of the Nationwide Class)

66.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully here.

67.     Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, in response to widespread consumer complaints regarding misleading and deceptive warranties. The Act imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

68.     The Products are a "consumer product," as defined by 15 U.S.C. § 2301(1).

69.     Plaintiffs, the Nationwide Class, and the California Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

70.     Defendant is a "warrantor" and supplier" as defined by 15 U.S.C. §§ 2301(4) and (5).

71.     Defendant has failed to remedy the Products' propensity to prematurely fail, despite Defendant's knowledge and notice of the Products' propensity to prematurely peel, chip, discolor, and generally degrade shortly after purchase.

72.     Defendant's Product labels, advertisements, website and marketing materials promise and expressly warrant that their Products are, among other things: "HEAT RESISTANT UP TO 800º"; capable of being used without butter, oil or

CLASS ACTION COMPLAINT

chemicals . . . ."; "Chip-resistant, Heat resistant"; durable and last a "lifetime";  and capable of ensuring "nothing will stick to the pan".

73.     Defendant's express limited warranty limits warranty relief to Product replacement, or a refund if sought within sixty days of purchase. But Defendant's replacement limitation fails of its essential purpose and is unconscionable as a matter of law under U.C.C. § 2-302.

74.     Defendant further claimed that their Copper Chef Pans:

- have "Cerami-tech non-stick coating"[58]

- are infused with "Cerami-Tech Non-Stick Technology" so that "[n]othing sticks to the surface and cleanup is a breeze"[59]

- is "Chip-resistant, Heat resistant"

- use "Cerami-Tech Non-Stick Technology that means nothing will stick to the pan[,]"[60] and which "provides instant food release and eliminates the need for added fats and oils."[61]

- "last[s] a lifetime," will "always perform like new," and is "more non-stick than ever before[,]"[62] and Product labels reinforce these purported performance properties:

    i.     "Maximum Durability & Longevity"

    ii.    "Effortless Clean-Up"

---

[58] https://www.amazon.com/Copper-Chef-4-Piece-Fry-Pan/dp/B07B26Q8HT/ref=sr_1_15?gclid=EAIaIQobChMIzp_GlNvN4gIVBVSGCh0x3QKrEAAYAiAAEgIcEPD_BwE&hvadid=326224921416&hvdev=c&hvlocphy=9021717&hvnetw=g&hvpos=1t2&hvqmt=b&hvrand=2582574998480943922&hvtargid=kwd-424303637207&hydadcr=4694_10064352&keywords=copper+chef+saucepans&qid=1559578676&s=gateway&sr=8-15¯ (last visited Feb. 21, 2020).

[59] https://www.walmart.com/ip/Copper-Chef-10-Piece-Nonstick-Pan-Set-with-CeramiTech/927228724?wmlspartner=wlpa&selectedSellerId=0&adid=22222222227158971152&wl0=&wl1=g&wl2=c&wl3=269426534393&wl4=pla-448938618148&wl5=9021671&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=online&wl12=9272287724&veh=sem (last visited Feb. 21, 2020).

[60] *Id.*

[61] https://www.copperchef.com/copper_chef_features (last visited Feb. 21, 2020).

[62] https://www.youtube.com/watch?v=LQ9yLiCp_rw (last visited Feb. 21, 2020).

              iii.    "Nothing Sticks – Instant Food Release"

- have a lifetime warranty that its non-stick coating will never peel, chip, or blister, and promises consumers a full refund within sixty days if they are dissatisfied with their purchase.

75.    The temporal and substantive limitations Defendant purports to impose through its express limited warranty also are unconscionable and unenforceable. At the time Defendant issued written warranties for the Products, Defendant knew and had notice that the Products had the propensity to prematurely fail and were incapable of performing as advertised and warranted. Defendant's continued misrepresentation and omissions concerning the Products, as well as Defendant's failure to abide by their own written and implied warranties, are "[u]nfair methods of competition in or affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce." Accordingly, Defendant's behavior also is unlawful under 15 U.S.C. §§ 2310(b), 45(a)(1).

76.    Plaintiffs and members of the Class notified Defendant of the breach within a reasonable time, and/or were not required to do so because affording Defendant a reasonable opportunity to cure their breach of written warranty would have been futile. Defendant also knows of Copper Chef Pans' inherent inability to conform to Defendant's warranties, yet has chosen to conceal this fact from Plaintiffs and Class members and refuse to comply with its warranty obligations.

77.    Plaintiffs seek to recover damages resulting directly from Defendant's breach of their written and implied warranties, and their deceitful and unlawful conduct.

78.    The Act also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Accordingly, Plaintiffs seek reformation of Defendant's written warranty to comport with Defendant's obligations under the Act and with consumers' reasonable expectations. Additionally, Plaintiffs seek to enjoin Defendant from acting

unlawfully as further alleged, including discouraging Plaintiffs to seek all available remedies.

79.     The Act also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2301(d)(2). Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of this case.

## COUNT II

### Breach of Express Warranty
**(On behalf of the Nationwide Class or, alternatively, the State Classes)**

80.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully here.

81.     Defendant's Product labels, advertisements, website and marketing materials promise and expressly warrant that their Products are, among other things: "HEAT RESISTANT UP TO 800º"; capable of being used without butter, oil or chemicals . . . ."; "Chip-resistant, Heat resistant"; durable and last a "lifetime";  and capable of ensuring "nothing will stick to the pan".

82.     Defendant further claimed that their Copper Chef Pans:

•      have "Cerami-tech non-stick coating"[63]

•      are infused with "Cerami-Tech Non-Stick Technology" so that "[n]othing sticks to the surface and cleanup is a breeze"[64]

•      is "Chip-resistant, Heat resistant"

---

[63] https://www.amazon.com/Copper-Chef-4-Piece-Fry-Pan/dp/B07B26Q8HT/ref=sr_1_15?gclid=EAIaIQobChMIzp_GlNvN4gIVBVSGCh0x3QKrEAAYAiAAEgIcEPD_BwE&hvadid=326224921416&hvdev=c&hvlocphy=9021717&hvnetw=g&hvpos=1t2&hvqmt=b&hvrand=2582574998480943922&hvtargid=kwd-424303637207&hydadcr=4694_10064352&keywords=copper+chef+saucepans&qid=1559578676&s=gateway&sr=8-15 (last visited Feb. 21, 2020).

[64] https://www.walmart.com/ip/Copper-Chef-10-Piece-Nonstick-Pan-Set-with-CeramiTech/927228724?wmlspartner=wlpa&selectedSellerId=0&adid=22222222227158971152&wl0=&wl1=g&wl2=c&wl3=269426534393&wl4=pla-448938618148&wl5=9021671&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=online&wl12=927228724&veh=sem (last visited Feb. 21, 2020).

- use "Cerami-Tech Non-Stick Technology" so that "[n]othing sticks to the surface and cleanup is a breeze"[65] and which "provides instant food release and eliminates the need for added fats and oils."[66]

- "last[s] a lifetime," will "always perform like new," and is "more non-stick than ever before[,]"[67] and Product labels reinforce these purported performance properties:

  i.    "Maximum Durability & Longevity"

  ii.   "Effortless Clean-Up"

  iii.  "Nothing Sticks – Instant Food Release"

- have a lifetime warranty that its non-stick coating will never peel, chip, or blister, and promises consumers a full refund within sixty days if they are dissatisfied with their purchase.

83.    Defendant breached these express warranties by supplying Products that do not and cannot perform as warranted, and by failing to compensate Plaintiffs for damages caused by their breach.

84.    As a direct result of Defendant's breach, Plaintiffs and the Class bought Copper Chef Pans when they otherwise would not have and did not receive the benefit of their bargain. Plaintiffs have therefore suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

85.    Defendant's express limited warranty limits warranty relief to Product replacement, or a refund if sought within sixty days of purchase. But Defendant's replacement limitation fails of its essential purpose and is unconscionable as a matter of law under U.C.C. § 2-302.

---

[65] https://www.walmart.com/ip/Copper-Chef-10-Piece-Nonstick-Pan-Set-with-CeramiTech/927228724?wmlspartner=wlpa&selectedSellerId=0&adid=22222222227158971152&wl0=&wl1=g&wl2=c&wl3=269426534393&wl4=pla-448938618148&wl5=9021671&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=online&wl12=92722872 4&veh=sem (last visited Feb. 21, 2020).

[66] https://www.copperchef.com/copper_chef_features (last visited Feb. 21, 2020).

[67] https://www.youtube.com/watch?v=LQ9yLiCp_rw (last visited Feb. 21, 2020).

86.   The temporal and substantive limitations Defendant purports to impose through its express limited warranty also are unconscionable and unenforceable. At the time Defendant issued written warranties for the Products, Defendant knew and had notice that the Products are prone to prematurely fail and are incapable of performing as advertised and warranted.

87.   Plaintiffs have complied with the warranty terms, including using the Products in accordance with Defendant's instructions.

88.   Plaintiffs and members of the Class notified Defendant of the breach within a reasonable time, and/or were not required to do so because affording Defendant a reasonable opportunity to cure their breach of written warranty would have been futile. Defendant also knows of Copper Chef Pans' inherent inability to conform to Defendant's warranties, yet has chosen to conceal this fact from Plaintiffs and Class members and refuse to comply with its warranty obligations.

89.   As a direct and proximate result of the breach of express warranties, Plaintiffs have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to other property.

## COUNT III

### Breach of the Implied Warranty of Merchantability
### (On behalf of the Nationwide Class or, alternatively, the State Classes)

90.   Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully here.

91.   Defendant is in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and selling the Products, which have been used by Plaintiffs. Defendant impliedly warranted to Plaintiffs that the Products were of a quality, free from defects, and fit for the ordinary purpose of non-stick cooking without using butter or oils.

92.   Defendant further claimed that their Copper Chef Pans:

- have "Cerami-tech non-stick coating"[68]
- are infused with "Cerami-Tech Non-Stick Technology" so that "[n]othing sticks to the surface and cleanup is a breeze"[69]
- is "Chip-resistant, Heat resistant"
- use "Cerami-Tech Non-Stick Technology" so that "[n]othing sticks to the surface and cleanup is a breeze"[70] and which "provides instant food release and eliminates the need for added fats and oils."[71]
- "last[s] a lifetime," will "always perform like new," and is "more non-stick than ever before[,]"[72] and Product labels reinforce these purported performance properties:
  - i.    "Maximum Durability & Longevity"
  - ii.   "Effortless Clean-Up"
  - iii.  "Nothing Sticks – Instant Food Release"
- have a lifetime warranty that its non-stick coating will never peel, chip, or blister, and promises consumers a full refund within sixty days if they are dissatisfied with their purchase.

---

[68] https://www.amazon.com/Copper-Chef-4-Piece-Fry-Pan/dp/B07B26Q8HT/ref=sr_1_15?gclid=EAIaIQobChMIzp_GlNvN4gIVBVSGCh0x3QKrEAAYAiAAEgIcEPD_BwE&hvadid=326224921416&hvdev=c&hvlocphy=9021717&hvnetw=g&hvpos=1t2&hvqmt=b&hvrand=2582574998480943922&hvtargid=kwd-424303637207&hydadcr=4694_10064352&keywords=copper+chef+saucepans&qid=1559578676&s=gateway&sr=8-15 (last visited Feb. 21, 2020).

[69] https://www.walmart.com/ip/Copper-Chef-10-Piece-Nonstick-Pan-Set-with-CeramiTech/927228724?wmlspartner=wlpa&selectedSellerId=0&adid=22222222227158971152&wl0=&wl1=g&wl2=c&wl3=269426534393&wl4=pla-448938618148&wl5=9021671&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=online&wl12=927228724&veh=sem (last visited Feb. 21, 2020).

[70] https://www.walmart.com/ip/Copper-Chef-10-Piece-Nonstick-Pan-Set-with-CeramiTech/927228724?wmlspartner=wlpa&selectedSellerId=0&adid=22222222227158971152&wl0=&wl1=g&wl2=c&wl3=269426534393&wl4=pla-448938618148&wl5=9021671&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=online&wl12=927228724&veh=sem (last visited Feb. 21, 2020).

[71] https://www.copperchef.com/copper_chef_features (last visited Feb. 21, 2020).

[72] https://www.youtube.com/watch?v=LQ9yLiCp_rw (last visited Feb. 21, 2020).

93.     But the Products were, and are, unfit for ordinary use and not of merchantable quality, as warranted by Defendant, and fail to conform to Defendant's various express warranties, because the Products' non-stick coating tends to peel, chip and/or fail. Before purchase, Plaintiffs could not have readily discovered that the Products were not merchantable for use as daily, non-stick cookware, were not of the same quality as those generally acceptable in the trade, and did not conform to the quality or provide the performance properties Defendant represented.

94.     Defendant has failed to provide adequate remedies under their limited warranty, which have caused that warranty to fail of its essential purpose, thereby permitting remedies under these implied warranties.

95.     Defendant has not sufficiently (meaning specifically and conspicuously) disclaimed the implied warranty of merchantability.

96.     Defendant's express limited warranty limits warranty relief to Product replacement, or a refund if sought within sixty days of purchase. But Defendant's replacement limitation fails of its essential purpose and is unconscionable as a matter of law under U.C.C. § 2-302.

97.     The temporal and substantive limitations Defendant purports to impose on the implied warranty through its express limited warranty also are unconscionable and unenforceable. At the time Defendant issued written warranties for the Products, Defendant knew and had notice that the Products had the propensity to prematurely fail and were incapable of performing as advertised and warranted.

98.     Defendant's conduct described in this Complaint constitutes a breach of the implied warranty of merchantability.

99.     Plaintiffs and members of the Class notified Defendant of the breach within a reasonable time, and/or were not required to do so because affording Defendant a reasonable opportunity to cure their breach of written warranty would have been futile. Defendant also knows of Copper Chef Pans' inherent inability to

conform to Defendant's warranties, yet has chosen to conceal this fact from Plaintiffs and Class members and refuse to comply with its warranty obligations.

100. As a direct and proximate result of the breaches of these implied warranties, Plaintiffs have suffered damages, injuries in fact and ascertainable losses in an amount to be determined at trial, including repair and replacement costs and damages to other property.

101. Plaintiffs demand judgement against Defendant for compensatory damages for themselves and each Class member, for the establishment of a common fund, plus additional remedies as this Court deems fit.

## COUNT IV

### Unjust Enrichment
### (On behalf of the Nationwide Class or, alternatively, the State Classes)

102. Plaintiffs re-allege and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully here.

103. As the intended and expected result of their conscious wrongdoing, Defendant has profited and benefited from the purchase of the Products by Plaintiffs and the classes.

104. Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct, Plaintiffs and the Class were not receiving Products of quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

105. Defendant has been unjustly enriched by their fraudulent and deceptive withholding of benefits to Plaintiffs and the Class at the expense of these parties.

106. Equity and good conscious militate against permitting Defendant to retain these profits and benefits.

107. As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and Class members suffered injury and seek an order directing Defendant's

disgorgement and the return to Plaintiffs and the classes of the amount each improperly paid to Defendant.

## COUNT V

### Violation of the California Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of the California Class)

108.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully here.

109.    Plaintiffs bring this claim individually and on behalf of the Class.

110.    Plaintiffs and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

111.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

112.    In the course of conducting business, Defendant engaged in unlawful business practices by violating Cal. Civ. Code § 1770 and Cal. Bus. & Prof. Code § 17500, as explained more fully below. Plaintiffs reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

113.    Defendant knew that, at the time the Products left Defendant's control, at the time of sale, and thereafter, that the Products were defective and were of low quality and durability. The defects described herein rendered the Products unable to perform the ordinary purposes for which they are used and caused the resulting damage described herein.

114.    In the course of conducting business, Defendant also committed "unfair" and "deceptive" business practices by, among other things, representing that its Products operate as advertised, when, in fact, they did not and were defective.

115.    These representations, Defendant's corresponding omissions, and Defendant's other related actions and conduct were false, misleading, and likely to deceive the consuming public.

116.   Additionally, there were reasonably available alternatives to Defendant's conduct, and Defendant's false and deceptive advertising provided no societal benefit. Plaintiff and the members of the Class paid large sums of money to Defendant to receive Copper Chef Products that were defective.

117.   Receiving money as a result of false and misleading advertising is contrary to public policy and is immoral, unethical, oppressive, unscrupulous and substantially injures consumers. And, as demonstrated by the many California laws prohibiting false and deceptive advertising, there is no justification or motive that outweighs the harm caused by Defendant's false and deceptive advertising.

118.   Defendant knew, or should have known, its material misrepresentations and omissions would be likely to deceive and harm the consuming public and result in consumers making payments to Defendant to obtain Copper Chef Products that were defective and of low quality and durability.

119.   Plaintiffs and the Class lost money and suffered injury in fact by purchasing Defendant's Products, and Defendant was unjustly enriched by receiving payments from Plaintiffs and the Class in return for providing Plaintiffs and the Class Products that were not as advertised.

120.   Unless restrained and enjoined, Defendant will continue to engage in the unlawful, unfair and fraudulent conduct described herein.

121.   Accordingly, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, seek restitution from Defendant of all money from Plaintiffs and the other members of the Class obtained as a result of Defendant's unfair competition, an injunction prohibiting Defendant from continuing and further engaging in its unlawful, unfair and fraudulent conduct, corrective advertising, and all other relief the Court deems appropriate.

/ / /

/ / /

CLASS ACTION COMPLAINT

## COUNT VI

**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of the California Class)**

122. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

123. The CLRA, Cal. Civ. Code §§ 1750, *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Cal. Civ. Code § 1770.

124. Plaintiffs bring this claim individually and on behalf of the Class.

125. Plaintiffs are "consumers," Defendant is a "person," and the Products are "goods" within the meaning of the CLRA. Cal. Civ. Code § 1761(a), (c) and (d).

126. Defendant's sale and advertisement of the Products constitute "transactions" within the meaning of the CLRA. Cal. Civ. Code § 1761(e).

127. Plaintiffs have standing to pursue these claims because they have suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein.

128. The CLRA declares as unlawful the following unfair methods of competition and unfair or deceptive acts or practices when undertaken by any person in a transaction intended to result, or which results in the sale of goods to any consumer:

> (5)    Representing that goods…have…approval, characteristics, …uses [and] benefits…which [they do] not have…

> (7)    Representing that goods…are of a particular standard, quality or grade…if they are of another.

> (9)    Advertising goods…with intent not to sell them as advertised.

> (16)   Representing that [goods] have been supplied in accordance with a previous representation when [they have] not. Cal. Civ. Code § 1770(a)(5), (7), (9) and (16).

129. Defendant violated the CLRA by representing that its Products operated as represented, when they did not.

130.   Defendant knew or should have known its Products were false and misleading.

131.   Defendant's violations of the CLRA proximately caused injury in fact to Plaintiffs and the Class.

132.   Plaintiffs and the Class members purchased Defendant's Products on the belief that the Products were high quality and durable as advertised.

133.   Defendant's Products, however, are defective and of low quality and not durable.

134.   Pursuant to Cal. Civ. Code § 1782(d), Plaintiffs, individually and on behalf of the other members of the Class, seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

135.   In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and the Class members seek injunctive and equitable relief for Defendant's violations of the CLRA.

**COUNT VII**

**Violation of the California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the California Class)**

136.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

137.   Plaintiffs bring this claim individually and on behalf of the Class.

138.   The FAL, in relevant part, states that

[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

Cal. Bus. & Prof. Code § 17500.

139.   Defendant's material misrepresentations and omissions alleged herein violate Cal. Bus. & Prof. Code § 17500.

140.   Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

141.   Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17500, Plaintiffs and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of falsely and misleadingly labeling the Products.

142.   The required intent is the intent to dispose of property, not the intent to mislead the public in the disposition of such property.

143.   Defendant violated the FAL by representing that its Products operated as advertised, when, in fact, they were defective and of low quality and durability.

144.   As a direct and proximate result of Defendant's untrue and misleading advertising, Plaintiff and the Class members have suffered injury in fact and have lost money.

145.   Accordingly, Plaintiffs request that the Court order Defendant to restore the money Defendant has received from Plaintiffs and the members of the Class, and that the Court enjoin Defendant from continuing its unlawful practices.

**COUNT VIII**
**Violation of the N.Y. Gen. Bus. Law § 349**
**(Deceptive and Unfair Trade Practices Act)**
**(By Plaintiff Gary on behalf of the New York Class)**

146.   This claim is brought on behalf of the New York Class against Defendant.

147.   Plaintiff Gary ("Plaintiff" for purposes of this section) and the New York Class are "persons" within the meaning of New York General Business Law ("New York GBL") § 349(h).

148.   Defendant is a "person," "firm," "corporation," or "association" within the meaning of New York GBL § 349.

149.   The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." New York GBL § 349. Defendant's

conduct directed toward consumers, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL.

150. Defendant's actions as set forth above occurred in the conduct of trade or commerce.

151. In the course of its business, Defendant failed to disclose and actively concealed the defective nature of the Copper Chef Pans and otherwise engaged in activities with a tendency or capacity to deceive.

152. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Copper Chef Pans.

153. Defendant knew, or should have known, about the defective Copper Chef Pans and their failure to perform as advertised. Defendant was made aware of the defective Copper Chef Pans through consumer complaints. Defendant failed to disclose these defects to consumers.

154. By failing to disclose and by actively concealing the defective nature of the Copper Chef Pans, by marketing them as "non-stick" and non-scratch, and by presenting itself as a reputable manufacturer, Defendant engaged in unfair and deceptive business practices in violation of the New York GBL. Defendant deliberately withheld the information about the propensity of the defective Copper Chef Pans in order to ensure that consumers would purchase the Copper Chef Pans.

155. In the course of Defendant's business, it willfully failed to disclose and actively concealed the serious defect discussed above. Defendant compounded the deception by repeatedly asserting that the Copper Chef Pans were reliable and of high quality, and by placing the blame of the Copper Chef Pans' failure to live up to advertisements on consumers.

CLASS ACTION COMPLAINT

156.  Defendant's unfair and deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the performance and reliability of the Copper Chef Pans, the quality of the Copper Chef Pans, and the true value of the Copper Chef Pans.

157.  Defendant intentionally and knowingly misrepresented material facts regarding the Copper Chef Pans with an intent to mislead Plaintiff and the New York Class.

158.  Defendant knew, or should have known, that their conduct violated the New York GBL.

159.  As alleged above, Defendant made material statements about the quality and performance of the Copper Chef Pans that were either false or misleading.

160.  To protect their profits and avoid remediation costs and a public relations nightmare, Defendant concealed the defects in the Copper Chef Pans, and allowed unsuspecting consumers to continue to purchase the Copper Chef Pans.

161.  Defendant should have disclosed this information because it was in a superior position to know the true facts related to the defective Copper Chef Pans, and Plaintiff and the New York Class could not reasonably be expected to learn or discover the true facts related to the defective Copper Chef Pans. Defendant, by the conduct, statements, and omissions described above, also knowingly, intentionally, and/or willfully concealed from Plaintiff and the New York Sub-Class that the Copper Chef Pans were defective.

162.  These acts and practices have deceived Plaintiff, the New York Class, and the public. In failing to disclose the defective nature of the Copper Chef Pans and suppressing material facts from Plaintiff and the New York Class, Defendant breached its duties to disclose these facts, violated New York GBL § 349, and caused injuries to Plaintiff Gary and the New York Class. Defendant's omissions and acts of

CLASS ACTION COMPLAINT

concealment pertained to information that was material to Plaintiff and the New York Class, as it would have been to all reasonable consumers.

163.   Defendant's acts and omissions were likely to mislead a reasonable consumer into purchasing Defendant's Products. Defendant's deceptive acts are material because they concern an essential feature of the Copper Chef Pans—its non-stick and non-scratch capabilities.

164.   The sale and distribution in New York of the Copper Chef Pans was a consumer-oriented act, and therefore actionable under the New York GBL.

165.   Plaintiff and the New York Class relied on Defendant's misrepresentations and omissions; had Plaintiff and the New York Class known that the Copper Chef Pans were defective, they would not have purchased them or would have paid less for them. Defendant's conduct thus proximately caused the injuries Plaintiff and the New York Class have suffered and complain of herein.

166.   At all times, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton, and outrageous.

167.   Defendant's actions impact the public interest because Plaintiff and the New York Class were injured in exactly the same way as thousands of others who purchased the Copper Chef Pans.

168.   Defendant also has refused to act on grounds generally applicable to Plaintiff and the New York Class, thereby making final injunctive relief appropriate.

169.   Defendant persists in its deceptive and unfair marketing and sales practices regarding the Copper Chef Pans to the detriment of consumers across the country, including Plaintiff and the New York Class.

170.   If Defendant is allowed to continue with these practices, consumers, including Plaintiff and the New York Class, will be irreparably harmed. Plaintiff and the New York Class do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint unless injunctive relief is granted to stop Defendant's deceptive marketing and sale of the Copper Chef Pans.

171.   Plaintiff and the New York Class thus are entitled to compensatory damages, treble damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees, as well as injunctive relief requiring Defendant to cease its unfair and deceptive practices relating to the sale of the Copper Chef Pans.

## COUNT IX

**Violation of the N.Y. Gen. Bus. Law §§ 349 and 350**
**(Deceptive and Unfair Trade Practices/False Advertising)**
**(By Plaintiff Gary on behalf of the New York Class)**

172.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

173.   Plaintiff Gary ("Plaintiff" for purposes of this Count) bring this cause of action on behalf of himself and on behalf of the members of the New York Class.

174.   Plaintiff brings this claim for damages under New York GBL §§ 349 and 350.

175.   Defendant engaged in consumer-oriented commercial conduct by selling and advertising the Copper Chef Pans to Plaintiff and the New York Class.

176.   Defendant misrepresented and omitted material facts regarding the Copper Chef Pans, their failure to perform as advertised and their inability to function as a non-stick, non-scratch Pan.

177.   Defendant's misrepresentations, omissions, and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false advertising, misrepresentation, and/or the knowing concealment, suppression, or omission in connection with the sale and advertisement of the Copper Chef Pans, in violation of New York GBL § 349.

178.   Defendant knowingly misrepresented the Copper Chef Pans as fit to be used for the purpose for which they were intended, when, in fact, Defendant knew the Products were defective and not what was advertised. Indeed, Defendant misrepresented the Copper Chef Pans as functional and suited for their intended purpose when, in fact, they were not.

179.   Defendant engaged in the deceptive acts and practices alleged herein in order to sell the Copper Chef Pans to Plaintiff and the New York Class.

180.   Defendant's practices, acts, policies, and course of conduct, including its omissions and subsequent failure to inform the public about the Product, as described above, were intended to induce, and did induce, Plaintiff to purchase one of the Copper Chef Pans.

181.   Defendant sold the Copper Chef Pans knowingly concealing the fact that they contained the defects alleged herein.

182.   Defendant's conduct proximately caused injuries to Plaintiff and other New York Class members. Had Plaintiff and the New York Class known about the defective nature of the Copper Chef Pans, they would not have purchased the Products, would have paid less for them.

183.   Thus, Plaintiff and the New York Class are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## COUNT X

**Violations of the Pennsylvania Unfair Trade Practices
and Consumer Protection Law ("PUTPCPL")
73 Pa. Stat. § 201-1, *et seq*.
(By Plaintiff Graeves on behalf of the Pennsylvania Class)**

184.   Plaintiff Graeves ("Plaintiff" for purposes of this Count), on behalf of the Pennsylvania Class, re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

185.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as set forth in the statute. 73 Pa. Stat. § 201-3.

186.   Defendant engaged in unfair and deceptive acts in the conduct of trade or commerce in violation of the PUTPCPL by the practices described above, and by knowingly and intentionally misrepresenting the performance properties of the Products, concealing from Plaintiffs and Class members that the Products are inherently defective and incapable of performing as intended and expected, and breaching various written warranties. These acts and practices violate, at a minimum, the following sections of PUTPCPL section 201-2:

(4)(ii)  Misrepresenting the source, sponsorship, approval or certification of goods or services;

(4)(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that person has a sponsorship, approval, status, affiliations or connection that he does not have;

4(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

(4)(ix) Advertising goods and services with intent not to sell them as advertised;

(4)(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made; and

(4)(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

187.   All of the conduct and misrepresentations alleged herein occurred in the course of Defendant's business and were part of a pattern or generalized course of conduct.

188.   As more fully alleged above, Defendant knew it had misrepresented the Products' performance properties and failed to disclose that they were and are inherently defective, yet they concealed, and continue to conceal, that knowledge from Plaintiff and the Pennsylvania Class.

189.   The facts misrepresented, concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Products.

Plaintiff and the Pennsylvania Class reasonably expected that Defendant would refrain from making the misrepresentations and omissions alleged herein, and that Defendant would refrain from selling inherently defective Products, information which is and was material to Plaintiff and Class members.

190.   Defendant, at all times relevant, knew or should have known that Plaintiff and Pennsylvania Class members did not know, nor could have reasonably discovered prior to purchase, that the Copper Chef Pans were and are inherently defective.

191.   Defendant's deceptive, unfair, fraudulent, and unlawful conduct alleged herein was specifically designed to and did induce Plaintiffs and Pennsylvania Class members to purchase the Copper Chef Pans.

192.   Had Defendant refrained from its deceitful course of conduct, Plaintiff and the Class would not have purchased the Products or would have paid substantially less for them. Accordingly, Plaintiff and Pennsylvania Class members were damaged as a direct and proximate result of Defendant's PUTPCPL violations.

193.   Pursuant to 73 Pa. Stat. § 201-9.2, Plaintiff requests that the Court grant treble damages and award Plaintiff and the Class all costs and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray, on behalf of themselves and members of the Class, that this Court:

A.     determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue order certifying the Class or Classes as defined above;

B.     award all actual, general, incidental, statutory, punitive and consequential damage to which Plaintiffs and Class members are entitled;

C.     award pre-judgement and post-judgement interest on such monetary relief;

CLASS ACTION COMPLAINT

D.    grant appropriate injunctive relief and/or declaratory relief as the Court may deem reasonable; and

E.    award reasonable attorney's fees and costs; and grant such further and other relief that this court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative class, demand a trial by jury on all issues so triable.

Dated: March 3, 2020

**CARLSON LYNCH, LLP**

*/s/ Eric D. Zard*

Eric D. Zard (CA Bar # 323320)
ezard@carlsonlynch.com
1350 Columbia St. Ste. 603
San Diego, CA 92101
Tel:   (619) 762-1900
Fax:   (619) 756-6990

**CARLSON LYNCH, LLP**
Edwin J. Kilpela (Pro Hac Vice Pending)
ekilpela@carlsonlynch.com
Matthew Brady (Pro Hac Vice Pending)
mbrady@carlsonlynch.com
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Tel.:   (412) 322-9243
Fax:   (412) 231-0246

**CARLSON LYNCH, LLP**
Katrina Carroll (Pro Hac Vice Pending)
kcarroll@carlsonlynch.com
111 W. Washington St., Ste. 1240
Chicago, IL 60602
Tel.:   (312) 750-1265
Fax:   (412) 231-0246

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Daniel O. Herrera
dherrera@caffertyclobes.com
Christopher P.T. Tourek
ctourek@caffertyclobes.com
150 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Tel.:   (312)782-4880
Fax:   (312)782-7785

*Attorneys for Plaintiffs and the Class*