UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-436 JGB (KKx)** | | Date | August 5, 2021 |
|---|---|---|---|---|
| Title | ***Andy Partida, et al. v. Tristar Products, Inc.*** | | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order GRANTING-IN-PART AND DENYING-IN-PART Defendant's Motion to Dismiss (Dkt. No. 32) (IN CHAMBERS)**

Before the Court is a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) filed by Defendant Tristar Products, Inc. ("Motion," Dkt. No. 32.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion.

## I.   BACKGROUND

On March 3, 2020, Plaintiffs Andy Partida, Patricia Gary, and Glenn Graeves, on behalf of themselves and all others similarly situated, filed a class action complaint against Defendant Tristar Products, Inc. ("Complaint," Dkt. No. 1.) The Complaint alleges ten causes of action: (1) violation of the Magnuson-Moss Warranty Act; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) unjust enrichment; (5) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (6) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (7) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; (8) violation of the N.Y. Gen. Bus. Law § 349 (Deceptive and Unfair Trade Practices Act); (9) violation of the N.Y. Gen. Bus. Law §§ 349 and 350 (Deceptive and Unfair Trade Practices/False Advertising); and (10) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), 73 Pa. Stat. § 201-1, et seq. (See Complaint.)

On June 26, 2020, Defendant filed this Motion, (see Motion), along with a request for judicial notice ("RJN," Dkt. No. 32-3). Plaintiffs filed their Opposition on August 3, 2020. ("Opposition," Dkt. No. 36.) Defendant replied on August 17, 2020. ("Reply," Dkt. No. 38.)

## II. FACTUAL ALLEGATIONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this Motion. Defendant Tristar Products, Inc. manufactures, markets, warrants, and sells Copper Chef Signature Cookware ("Copper Chef Pans" or "Pans"), a line of cookware. (Compl. ¶ 1.) Defendant advertises the Copper Chef Pans as "breakthrough," premium alternatives to traditional pans, as they utilize "Cerami-Tech Non-Stick Technology" so that "[n]othing sticks to the surface and cleanup is a breeze." (Id. ¶ 2.) Defendant also claims that the Pans are "Chip-resistant, Heat resistant," and do not require fats or oils in order to provide nonstick functionality. (Id. ¶¶ 39-48.) Defendant offers a "Lifetime Warranty" that its non-stick coating will never peel, chip, or blister, and promises consumers a full refund within sixty days. (Id. ¶¶ 2,47.) Defendant makes these claims on product labels, on its own and third-party websites, and in infomercials and television commercials. (Id. ¶¶ 2-3.)

Plaintiff Partida purchased a Copper Chef Pan from retailer QVC in or around the end of 2016, after viewing and relying on Defendant's advertising claims. (Id. ¶¶ 8-9.) Plaintiff Gary purchased Copper Chef Pans from retailer QVC in or around September or October 2017, after viewing and relying on Defendant's advertising claims. (Id. ¶¶ 14-16.) Plaintiff Graves purchased Copper Chef Pans through Amazon on November 18, 2017, after viewing and relying upon Defendant's advertising claims. (Id. ¶¶ 25, 27.) Defendant processed and fulfilled Graves's order. (Id. ¶ 26.)

However, Copper Chef Pans do not perform as advertised. (Id. ¶¶ 49-54.) Partida's Copper Chef Pan began to deteriorate within months of purchase, when food began to stick to the surface, the Pan began to chip and peel, and it became extremely hard to clean, forcing him to cease using his Pan. (Id. ¶¶ 10-11.) Gary's Pans began to deteriorate within days of purchase, when food began to stick to the surfaces, and the Pans began to scratch, peel and chip, causing her to cease using her Pans. (Id. ¶ 18.) Graves's Pans began to deteriorate within days of purchase, when food began to stick to their surfaces, and the surfaces began to discolor, causing him to cease using his Pans. (Id. ¶ 29.) Numerous websites and blogs have published consumer complaints and negative consumer reviews describing the same performance issues. (Id. ¶¶ 50-52.)

When consumers seek relief pursuant to Defendant's lifetime guarantee, Defendant offers similarly defective Pans to consumers who return their Pans and pay an additional $14.99 for shipping and handling. (Id. ¶ 56.) Defendant regularly informs consumers that the Pans failed because they were not properly "seasoned," although its website does not inform consumers of any such requirement. (Id. ¶ 57.) Consumers who seek a refund must do so within sixty days of purchase. (Id. ¶ 58.) Defendant typically forces consumers to forgo a refund and instead accept replacement Pans. (Id.)

Partida did not contact Defendant to demand a refund. (Id. ¶ 12.)  Gary first contacted retailer QVC about the failure of the Pans. (Id. ¶ 19.)  QVC offered her a $10 discount coupon for her next QVC order, but claimed it was unable to return the Pans. (Id.)  In or around October 2019, two years after her purchase, Gary contacted Defendant via e-mail and demanded a refund. (Id. ¶ 20.)  Defendant claimed Gary had failed to properly "season" her Pans and declined to refund the purchase price. (Id. ¶ 21.)  Defendant instead offered Gary a replacement Pan but required Gary to pay a shipping and handling fee. (Id. ¶ 22.)  In November 2018, approximately a year after his purchase, Graeves contacted Defendant by telephone to demand warranty coverage for his Pans. (Id. ¶ 30.)  Defendant claimed that Graeves's Pans were not defective, but that Graeves had misused his Pans, and declined to refund Graeves's purchase price. (Id. ¶ 31.)

Plaintiffs bring this case on behalf of a nationwide class of consumers who purchased Copper Chef Pans, or in the alternative, three state subclasses of consumers who reside in California, New York, and Pennsylvania, and purchased Copper Chef Pans. (Id. ¶¶ 63-64.)

## III. LEGAL STANDARD

### A. Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2))

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154-55 (9th Cir. 2006) (citing Fireman's Fund Ins. Co. v. Nat. Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996)).  Because California authorizes jurisdiction to the fullest extent permitted by the Constitution, see Cal. Code Civ. P. § 410.10, the only question the Court must ask in this case is whether the exercise of jurisdiction over Defendant would be consistent with due process.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  There are two recognized bases for exercising personal jurisdiction over a non-resident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question.  See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414–16 (1984).

Where, as here, a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915

(9th Cir. 2001).  Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.  AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181.

## B.  Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15–05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV.  DISCUSSION

Defendant move to dismiss the out-of-state Plaintiffs and class members' claims under Rule 12(b)(2), arguing that Plaintiffs Gary and Graeves have no standing to invoke California law

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk MG

or seek its extraterritorial application. Defendant also seeks to dismiss the action for failure to state a claim under Rule 12(b)(6). For the reasons established below, the Court DENIES the Motion as to standing, personal jurisdiction over out-of-state class members, and Claims 2 and 4-7. However, the Court GRANTS the Motion as to personal jurisdiction as to out-of-state named Plaintiffs and Claims 3 and 8-10.

## A. Standing

Defendant argues that Plaintiffs Gary and Graeves may not assert claims under California law on behalf of a nationwide class. The Complaint asserts claims for breach of express warranty, implied warranty of merchantability, and unjust enrichment on behalf of the nationwide class or, alternatively, the state classes. (Compl. ¶¶ 80-107.)

Defendant argues that the Complaint does not assert a particular state law, and therefore assumes that these claims are asserted under California law. (Mot. at 7.) Plaintiffs counter that the Complaint establishes that in the alternative to a nationwide class, Plaintiffs Gary (a New York resident) and Graeves (a Pennsylvania resident) bring their warranty and unjust enrichment claims on behalf of State-specific Subclasses. (Compl. ¶¶ 80-107 (claims brought "[o]n behalf of the Nationwide Class or, alternatively, the State Classes").) Plaintiffs argue that they "could seek to certify subclasses of putative class members from individual states or subclasses of class members from groups of states with … laws that are not materially different." Forcellati v. Hyland's, Inc., 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012). (Opp'n at 5.) Plaintiffs further argue that because they do not allege that a single state's laws govern the class claims, Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581 (9th Cir. 2012), does not bar their nationwide claims. (Id. at 6.)

The Court is unpersuaded that Plaintiffs have sufficiently asserted Claims 1-3 under New York or Pennsylvania law, as they do not "identify all such states and the laws in question with specificity." Rojas v. Bosch Solar Energy Corp., 386 F. Supp. 3d 1116, 1123 (N.D. Cal. 2019) (assuming that claim was asserted under California law, where the complaint did not make clear whether claims were asserted under California law or the law of other states). Still, the Court declines to strike or dismiss Plaintiffs' nationwide class claims.

In Mazza, the Ninth Circuit vacated certification of a nationwide class of consumers after finding "that the district court abused its discretion in certifying a class under California law that contained class members who purchased or leased their car in different jurisdictions with materially different protection laws." 666 F.3d at 590. Although the Court finds that, as plead, Plaintiffs' claims are asserted under California law, Plaintiffs' nationwide class claims may still survive. "Courts in this Circuit have routinely held that [Mazza] does not hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws." Mack v. LLR, Inc., 2018 WL 6927860, at *5 (C.D. Cal. Aug. 15, 2018) (citing Sonner v. Schwabe N. Am., Inc., 2015 WL 13307076, at *1 (C.D. Cal. Nov. 18, 2015)). "Thus, courts should engage in a choice-of-law analysis to determine if the various laws at issue conflict." (Id.) As this Court has previously recognized, courts in this Circuit appear divided as to whether that choice-of-law

analysis is appropriate at the pleading stage. Id. at *5. However, here, as in Mack, the Court concludes that it would be premature to engage in a detailed choice-of-law analysis at this stage. Id. The Court considers that Mazza was decided at the class certification stage, after the Ninth Circuit conducted a detailed choice-of-law analysis comparing how multiple states' consumer protection laws applied to the plaintiffs' claims. Mazza, 666 F.3d at 589-94.

Such detailed analysis is not appropriate at this stage. Dean v. Colgate-Palmolive Co., 2015 WL 3999313, at *11 (C.D. Cal. June 17, 2015). Even if it were, Defendant does not make any showing to support this analysis. Accordingly, as it has repeatedly done, the Court defers this fact-intensive inquiry to the class certification stage, after the parties have engaged in discovery. Dean v. Colgate-Palmolive Co., 2015 WL 3999313, at *11 (C.D. Cal. June 17, 2015). While the Court recognizes that Plaintiffs may face significant hurdles to certify a nationwide class, the Court declines to dismiss (or strike) nationwide class allegations here, and finds that "Rule 23 is the better vehicle to test the propriety of class certification." Id. at *11 (C.D. Cal. June 17, 2015) (quoting Connelly v. Hilton Grant Vacations Co., LLC, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012)). The Court DENIES the Motion as to the nationwide class allegations.

## B. Personal Jurisdiction

Defendant argues that the Court has no personal jurisdiction over Defendant to adjudicate Plaintiffs Gary and Graeves' or out-of-state putative class members' claims. (Mot. at 20-22.) Defendant mainly relies on a line of cases following Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty., where the U.S. Supreme Court held that California courts did not have personal jurisdiction over the defendant pharmaceutical company as to claims brought by plaintiffs in a mass tort action who were nonresidents of California, where the nonresident plaintiffs did not allege any connection between their claims and California. 137 S. Ct. 1773, 1777 (2017). The Supreme Court, however, did not address whether its holding extended to the class action context. In Zuehlsdorf v. FCA US LLC, this Court agreed with "the weight of authority examining this issue[, which] has concluded that Bristol-Myers does not apply to class actions." 2019 WL 4422673, at *6 (C.D. Cal. Aug. 7, 2019) (quoting Sotomayor v. Bank of Am., N.A., 377 F. Supp. 3d 1034, 1037 (C.D. Cal. 2019)). The Court reasserts this view, and DENIES Defendant's Motion as to personal jurisdiction over out-of-state putative class members.

As to named Plaintiffs Gary and Graeves, this is a closer question because courts generally find that "Bristol-Myers applies to named parties" in class actions sounding in diversity. Gaines v. Gen. Motors, LLC, 2018 WL 3752336, at *2 (S.D. Cal. Aug. 7, 2018). Plaintiffs appear to concede that this Court does not have specific personal jurisdiction over named Plaintiffs' claims, and ask the Court to exercise pendent personal jurisdiction over their claims. (Opp'n at 21.)

"[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180-

81 (9th Cir. 2004).  This doctrine serves "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties."  Id.

However, as Defendant points out, "nearly every court considering the issue has concluded pendent party jurisdiction cannot be exercised by a federal court sitting in diversity." Sloan v. Gen. Motors LLC, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019) ("Sloan II").  To argue the contrary, Plaintiffs rely in part on an earlier decision in Sloan (2019 WL 6612221 (N.D. Cal. Dec. 5, 2019) ("Sloan I")).  However, that court later revised its finding on pendent jurisdiction in Sloan II after considering "the growing weight of authority," finding that "Bristol-Myers applies to federal courts sitting in diversity, and thus [] the exercise of pendent personal jurisdiction is improper in such a circumstance."  Sloan II, 2019 WL 6612221, at *9.  Plaintiffs also point to Allen v. ConAgra Foods, Inc., which relied on Sloan I to conclude that where "out-of-state named plaintiffs' claims … arose from the same nucleus of operative facts as claims by in-state plaintiffs … it is appropriate to assert pendent jurisdiction over the claims by the nonresident."  2018 WL 6460451, at *8 (N.D. Cal. Dec. 10, 2018).  Plaintiffs, however, fail to address Sloan II or "the growing weight of authority" recognized therein.  The Court is unpersuaded by Plaintiffs' scarcely supported arguments.  The Court GRANTS Defendant's Motion as to named Plaintiffs Gary and Graeves's claims and DISMISSES them WITHOUT LEAVE TO AMEND.   Accordingly, Claims 8, 9, and 10 by Plaintiffs Gary and Graeves are DISMISSED.

## C.  Magnuson-Moss Warranty Act (Claim 1)

Plaintiffs voluntarily dismiss their MMWA claim, following the Ninth Circuit's decision in Floyd v. Am. Honda Motor Co., No. 18-55957 (9th Cir. July 28, 2020) holding that federal courts cannot exercise jurisdiction over MMWA claims in class actions brought by fewer than one hundred named plaintiffs.  (Opp'n at 2.)  Claim 1 is therefore DISMISSED.

## D.  Breach of Express Warranties (Claim 2)

Tristar argues that Plaintiffs' express warranty claim fails for four reasons: (1) Tristar's limited warranties do not cover Plaintiffs' design defect claims; (2) Plaintiffs have not sufficiently plead a breach of Tristar's express limited warranties; (3) Tristar's express warranties are not unconscionable or unenforceable; and (4) Plaintiffs' express warranty-by-representation claims are co-extensive with Tristar's written warranty claims.

To state a claim for breach of warranty under California law, Plaintiffs must allege that: (a) the defendant made a warranty; (b) the product did not comply with the warranty at the time of sale; (c) plaintiff's injury was proximately caused by the defective nature of the product; and (d) the plaintiff suffered damage.  Hauter v. Zogarts, 14 Cal. 3d 104, 105 (1975).

"A warranty relates to the title, character, quality, identity, or condition of the goods." Keith v. Buchanan, 173 Cal.App.3d 13, 20 (1985) (internal citation omitted.).  In deciding whether a statement or affirmation made by a seller constitutes an express warranty under Cal.

Comm. Code § 2313, the Court must decide whether the seller's statement constitutes an affirmation of fact or a promise or description of the goods or whether it is instead "merely the seller's opinion or commendation of the goods." <u>Id.</u>[1] Assuming the language creates a warranty, the Court must then determine whether the statement was "part of the basis of the bargain." <u>Id.</u> Finally, the Court determines whether the warranty was breached. <u>Id.</u>; <u>see also</u> <u>Ham v. Hain Celestial Grp., Inc.</u>, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) (describing standard).

Plaintiffs adequately allege several promises or descriptions of the Pans, including that the Pans utilize "Cerami-Tech Non-Stick Technology" so that "[n]othing sticks to the surface and cleanup is a breeze[,]" and that they are "Chip-resistant, Heat resistant," and do not require fats or oils in order to provide nonstick functionality. (Compl. ¶¶ 2, 39-48.) Plaintiffs allege that Tristar communicated these via standardized labels and packaging, advertisements, websites, and marketing materials. (<u>Id.</u> at ¶¶ 9, 16, 27, 48.) Plaintiffs allege that they only purchased the Pans after viewing and relying on Defendant's advertising claims. (<u>Id.</u> ¶¶ 8-9, 14-16, 25, 27.) Plaintiffs further allege that Tristar breached these warranties because the Pans do not work as advertised, as they lose their non-stick performance within days or months of purchase, (<u>id.</u> ¶¶ 3, 10, 18, 29, 49), and Defendant refused to provide consumers a refund or an adequate remedy, (<u>id.</u> at ¶¶ 20-22, 30-31, 58). The Court finds that these allegations are sufficient to meet the elements of a breach of express warranty claim. <u>See</u> <u>Kanfer v. Pharmacare US, Inc.</u>, 142 F. Supp. 3d 1091, 1104 (S.D. Cal. 2015); <u>Coffelt v. Kroger</u>, 2017 WL 10543343, at *7 (C.D. Cal. Jan. 27, 2017).

Defendant argues that representations that the Pans are "durable and last a 'lifetime,'" (Compl. ¶¶ 72, 81), are "nonactionable puffery." (Mot. at 15.) The Court may determine as a matter of law whether a statement is puffery. <u>See</u> <u>Cook, Perkiss & Liehe, Inc. v. California Collection Serv. Inc.</u>, 911 F. 2d 242, 245 (9th Cir. 1990). However, even statements that "might be innocuous 'puffery' or mere statement of opinion standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation." <u>Casella v. Webb</u>, 883 F. 2d 805, 808 (9th Cir. 1989). The Court therefore finds that to the extent that the parties disagree on the proper interpretation of the representations at issue and whether they constitute an affirmation of fact, that is a question of fact that is premature at the pleading stage. <u>See</u> <u>McDonnell Douglas Corp. v. Thiokol Corp.</u>, 124 F.3d 1173, 1176 (9th Cir. 1997); <u>Buonasera v. Honest Co., Inc.</u>, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016).

The Court therefore DENIES Defendant's Motion as to Claim 2.

## E. Breach of Implied Warranty of Merchantability (Claim 3)

Liability under an implied warranty "does not depend on any specific conduct or promise of defendant, but turns on whether the product is merchantable under the California Uniform Commercial Code." <u>Hauter v. Zogarts</u>, 14 Cal. 3d at 105. "A plaintiff who claims a breach of the

[1] This also applies to claims under Section 2-313 of the New York Uniform Commercial Code. <u>Promuto v. Waste Mgmt., Inc.</u>, 44 F. Supp. 2d 628 (S.D.N.Y. 1999).

implied warranty of merchantability must show that the product did not possess even the most basic degree of fitness for ordinary use."  Viggiano v. Hansen Nat. Corp., 944 F. Supp. 2d 877 (C.D. Cal. 2013).  Still, whether or not a warranty of fitness for a particular purpose arises in any individual case is fundamentally a question of fact to be determined by the circumstances of contracting.  See, e.g., Pronti v. DML of Elmira, Inc., 103 A.D.2d 916 (N.Y. App. Div. 1984) ("Whether there was a breach of implied warranty of merchantability is factual question for jury determination.") (citing McKinney's Uniform Commercial Code § 2–314(2)(c)).

Under California law, "[t]o state a claim for breach of an implied warranty, plaintiffs must establish vertical privity with the warrantor."  In re Sony Grand WEGA, 758 F. Supp. 2d 1077, 1100 (S.D. Cal. 2010).  Defendant argues that Plaintiffs' implied breach of warranty claim fails because Plaintiffs are not in vertical privity with Defendant.  Plaintiffs argue that they need not show vertical privity because this case falls under the reliance exception to the privity requirement for "when the plaintiff relies on written labels or advertisements of a manufacturer."  (Opp'n at 17 (citing T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc., 83 F. Supp. 3d 855, 874 (N.D. Cal. 2015)).)  But as Defendant point out, this exception "only applies to express warranty claims."  (Reply at 8.)  Izzetov v. Tesla Inc., 2020 WL 1677333, at *4 (N.D. Cal. Apr. 6, 2020); Zeiger v. WellPet LLC, 304 F. Supp. 3d 837, 854 (N.D. Cal. 2018).  Thus, Plaintiff's claim under California law fails.

The Court therefore GRANTS Defendant's Motion as to Claim 3 under California law and DISMISSES Claim 3 WITHOUT LEAVE TO AMEND.

## F.  Unjust Enrichment (Claim 4)

Defendant argues that Plaintiffs' unjust enrichment claim fails because it is not a standalone cause of action under California law, and Plaintiffs do not allege that they have no adequate legal remedy.  (Mot. at 24-25.)  Plaintiffs counter that unjust enrichment describes the theory underlying a quasi-contract cause of action, which may be sufficient to state a cause of action.  (Opp'n at 24.)  The Court agrees with Plaintiffs.

Rule 8(d) "allows parties to plead claims in the alternative or in an inconsistent manner, and courts in this Circuit have allowed unjust enrichment to proceed simultaneously in one action."  Becerra v. Gen. Motors LLC, 241 F. Supp. 3d 1094, 1117 (S.D. Cal. 2017); see also Longest v. Green Tree Servicing LLC, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015) (listing cases).  Moreover, the Court declines to dismiss this claim merely because it may be duplicative or superfluous.  As the Ninth Circuit has noted, that a claim is duplicative of or superfluous of other claims "is not grounds for dismissal."  Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 762-63 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2)).  Rather, "to the extent that this cause of action is duplicative of Plaintiff's claims under California statutory law (the UCL, CLRA, and FAL) which also seek restitution, Plaintiff is [also] permitted to plead claims in the alternative."  Diamos v. Walmart Inc., 2020 WL 1942322, at *4 (C.D. Cal. Jan. 9, 2020).

The Court therefore DENIES Defendant's Motion as to Claim 4.

**G.  UCL, CLRA, and FLA Claims (Claims 5-7)**

Defendant argues that Plaintiffs' UCL, CLRA, and FAL claims fail because Plaintiffs do not allege that Tristar had actual knowledge of the alleged defects at the time Plaintiffs purchased their Pans. (Mot. at 17-18.)  The Court disagrees.

The California Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  California's False Advertising Law ("FAL") prohibits any "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 1750.  "This statute makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]' "  Arevalo v. Bank of Am. Corp., 850 F. Supp. 2d 1008, 1023-24 (N.D. Cal. 2011) (internal citation omitted).  Similarly, California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  Specifically, the CLRA prohibits, among other things, "[a]dvertising goods or services with intent not to sell them as advertised," id. at subd. (a)(9), and "[r]epresenting that goods or services are of a particular standard, quality, or grade ... if they are of another."  Id. at subd. (a)(7).

To state a claim under the UCL, CLRA, and FAL, Plaintiffs must allege that Defendant was aware of the Pans' defects at the time of Plaintiffs' purchase.  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 (9th Cir. 2012).  Defendant relies on Wilson to argue that Plaintiffs fail to make that showing, as they mainly allege a handful of anonymous consumer reviews on third party websites, most of which post-date their purchases. (Mot. at 17-18.)  In Wilson, the Ninth Circuit found that fourteen unidentified complaints did not "support an inference" that the defendant was aware of the defect at the time it sold the products to the plaintiffs.  Wilson, 668 F.3d at 1148.  However, the complaint did not indicate where or how the complaints were made (i.e., whether they were made via HP's website or elsewhere), nor did it provide dates for twelve of the complaints (with the remaining two complaints including dates of over two years after the plaintiffs' purchase).  Id.  Indeed, in a later case, the Ninth Circuit clarified that "Wilson did not hold that consumer complaints may never support an allegation of presale knowledge."  Williams v. Yamaha Motor Co., 851 F.3d 1015, 1027 (9th Cir. 2017).

Here, the Complaint lists dozens of customer complaints, identifying where they were posted and their dates.  (Compl. ¶¶ 50-52.)  Plaintiffs also allege that 70% and 86% of consumer complaints on third-party websites are negative.  (Id. ¶¶ 50-51.)  Plaintiffs further allege that experts reported that the Pans were not copper cookware, as advertised.  (Id. ¶ 54.)  These allegations are sufficient at this stage.  Plaintiffs "need not plead facts showing actual knowledge on the part of the defendants."  Patterson v. RW Direct, Inc., 382 F. Supp. 3d 938, 941 (N.D. Cal. 2019) (finding that plaintiffs sufficiently alleged that the defendants were on notice of the defect because 8.5% of customer reviews left on the defendants' websites and third-party retailers' websites identified the alleged defects).  Rather, "when a significant percentage of product reviews identify a problem, then the company that sells that product can reasonably be

deemed on notice of the issue, even if only a subset of consumers chooses to leave a review." <u>Id.</u> In any event, to the extent that Defendant disputes that it was on notice of the alleged defects as a result of the product reviews identified in the Complaint, the Court notes that "[w]hether a defendant had notice of a defect is a highly factual inquiry." <u>Id.</u> at 940.

The Court therefore finds that Plaintiffs sufficiently allege that Defendant was on notice of the alleged defects.  Defendant does not challenge any other element of Plaintiffs' UCL, CLRA, and FAL claims.  Defendant's Motion as to Claims 5-7 is therefore DENIED.

## V.   CONCLUSION

For the reasons above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

**IT IS SO ORDERED.**